## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

MOSTAFA KAMALI ARDAKANI,

      Plaintiff,

v.                            Case No.: 8:22-cv-00053-CEH-CPT

FLORIDA POLYTECHNIC UNIVERSITY
BOARD OF TRUSTEES,

      Defendant.

_____/

## DEFENDANT'S MOTION FOR PARTIAL DISMISSAL AND INCORPORATED MEMORANDUM OF LAW

COMES NOW Defendant, Florida Polytechnic University Board of Trustees (the "University" or "FPU"), and pursuant to the provisions of Federal Rule of Civil Procedure 12(b)(6) hereby moves to dismiss Plaintiff Dr. Ardakani's discrimination claims based on race and religion and hostile work environment harassment under Title VII of the Civil Rights Act of 1964 ("Title VII") because Plaintiff has failed to exhaust his administrative remedies regarding these claims.[1] In the alternative, should

---

[1] While this motion does not seek dismissal of all claims asserted in the Amended Complaint, Defendant is not required to answer the claims not addressed in its motion at this time. *See, e.g., Taylor v. Pekerol*, No. 5:14-cv-96-RH-GRJ, 2016 WL 7985259, at *1 (N.D. Fla. Mar. 10, 2016) ("[p]laintiff is incorrect that the filing of a motion to dismiss as to some but not all of the counts requires a defendant to respond to the unchallenged counts. Serving a motion to dismiss under Rule 12 extends the party's time to answer."); *Jacques v. First Liberty Ins. Corp.*, No. 16-CV-1240-T-23TBM, 2016 WL 3221082, at *1 (M.D. Fla. June 9, 2016)(denying plaintiff's application for default in light of defendant's persuasive argument that it is not necessary to answer unchallenged count in complaint while a Rule 12 motion to dismiss remaining counts remains pending). To the extent the Court disagrees and requires a responsive pleading to the claims not addressed at this time, Defendant respectfully moves for an extension of time to respond to these claims until 14 days after the Court rules on this motion.

the Court find the foregoing claims properly exhausted, the University submits that Plaintiff has pled no facts to show severe and pervasive workplace conduct and therefore failed to state a claim for hostile work environment, requiring dismissal. In support of the requested relief, the University refers to the legal memorandum below.

**Preliminary Statement**

Plaintiff is a university professor who alleges the University discriminated against him based on his race, national origin, and religion; created a hostile work environment; and retaliated against him by trying to sabotage his academic career and not renewing his employment contract after he raised concerns of discrimination on campus. (Doc. 16, ¶¶ 10-13).

## LEGAL MEMORANDUM

## I.  Relevant Background

Plaintiff filed a charge of discrimination with the EEOC on August 16, 2021, assigned as Charge No. 511-2021-01740. (Ex. A).[2] On August 18, 2021, the EEOC notified Plaintiff that it would not proceed further with its investigation and issued a Dismissal and Notice of Rights. (Ex. B). Plaintiff subsequently filed his initial complaint in state court on November 9, 2021. (Docs. 1-1, 1-3). The University removed the case to this court on January 6, 2022 (Doc. 1), and subsequently filed a motion to dismiss, as Plaintiff had improperly named Florida Polytechnic University, rather than the University's Board of Trustees as the defendant. (Doc. 11). This Court

---

[2] Documents referenced in a complaint that are central to the claim asserted may be considered if the contents are not in dispute and the defendant attaches the document to a motion to dismiss. *Financial Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007). The EEOC charge is properly considered because Plaintiff has not disputed its authenticity and refers to it in the amended complaint.

granted the motion and permitted Plaintiff to amend. (Doc. 15). Plaintiff subsequently filed an amended complaint (the "AC") naming the Florida Polytechnic University Board of Trustees presenting allegations identical to the initial complaint. (Doc. 16).

Plaintiff began his employment with the University in July 2018 as an Associate Professor of Data Science and Business Analytics. (Doc. 16, ¶ 15). As alleged, Plaintiff, who is Middle Eastern and Iranian, raised concerns that he was receiving unequal treatment in meetings with university officials and through grievances. (Id., 2-5). Plaintiff asserts that after he brought his concerns to the University and requested an investigation, he was singled out for corrective action in retaliation for his complaints. (Id., 3-4). Plaintiff brings a two-count claim. Count I is a claim for discrimination and harassment under Title VII and Count II is a retaliation claim under the Florida Civil Rights Act ("FCRA"). (Doc. 16, 3-5). Plaintiff identifies a number of events purported to constitute discrimination and harassment: a lower performance evaluation than non-Middle Eastern colleagues, unfair review of his syllabi, denial of professional development and startup funding, a sporadic teaching schedule, and several other acts and incidents. (Id., 2-4). Under Count II for retaliation under the FCRA, Plaintiff alleges he was reprimanded with "false accusations" because of his complaints and that his employment was not renewed by the University. (Id., 5).

## II. Motion to Dismiss Standard

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint, however,

"requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To state a claim with sufficient specificity requires that the complaint have enough factual matter taken as true to suggest required elements of the claim. *Watts v. Florida Int'l Univ.*, 495 F.3d 1289, 1296 (11th Cir. 2007). When ruling on a 12(b)(6) motion, the court must accept all factual allegations in the complaint as true and must consider only the complaint itself, documents incorporated by reference, and any matters of which a court may take judicial notice. *Schoelzel v. Volusia Cnty., Fla.*, No. 6:14-CV-1633-ORL, 2015 WL 368939, at *1 (M.D. Fla. Jan. 27, 2015) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007)). "With reference only to the non-conclusory and well-pled facts, the Court must determine whether the plaintiff states 'a claim to relief that is plausible on its face.'" *Id.*, 2015 WL 368939, at *1 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)).

### III. Plaintiff's Religious Discrimination, Racial Discrimination, and Hostile Work Environment Claims Should Be Dismissed for Failure to Exhaust Administrative Remedies

In Count I of his Amended Complaint, labeled as "Discrimination/Harassment in Violation of the Civil Rights Act of 1964" Plaintiff appears to assert a Title VII claim on two distinct theories: disparate treatment (Doc. 16, ¶ 29) and hostile work environment (Id., ¶¶ 10, 27, 41); Plaintiff also asserts a retaliation claim under the FCRA in Count II. (Doc. 16, ¶¶ 47-51). Although Plaintiff labels Count I as proceeding

only under Title VII, Paragraph 41 alleges that the University also violated the FCRA.[3] Regardless of the theory of discrimination or statute under which Plaintiff proceeds, the claims in Count I are unsustainable because Plaintiff failed to exhaust his administrative remedies with respect to the disparate treatment discrimination based on religion and race and hostile work environment harassment claims. For this reason, the University moves to dismiss these claims.

Before commencing a lawsuit under Title VII, a plaintiff must first exhaust his administrative remedies by timely filing a charge of discrimination. *H&R Block E. Enters., Inc. v. Morris*, 606 F.3d 1285, 1295 (11th Cir. 2010). The starting point of ascertaining the permissible scope of a judicial complaint alleging employment discrimination is the administrative charge and investigation. *Anderson v. Embarq/Sprint*, 379 F.App'x 924, 926 (11th Cir. 2010) (cleaned up). The judicial complaint is limited by the scope of the EEOC investigation that "can reasonably be expected to grow out of the charge of discrimination." *Gregory v. Ga. Dep't of Hum. Res.*, 355 F.3d 1277, 1280 (11th Cir. 2004). The exhaustion requirement permits the EEOC an opportunity to investigate the alleged discriminatory practices and perform its role in obtaining voluntary compliance and promoting conciliation efforts. *Id.* at 1279. Judicial claims are allowed if they "amplify, clarify, or more clearly focus the allegations in the EEOC complaint, but . . . allegations of new acts of discrimination

---

[3] Claims asserted under different statutes asserting different theories of discrimination must be pled in separate counts. *See Hausberg v. Wilkie*, No. 8:20-CV-2300-TPB-JSS, 2021 WL 4133739, at *2 (M.D. Fla. Sept. 10, 2021).

are inappropriate." *Id.* at 1279-80 (quoting *Wu v. Thomas*, 863 F.2d 1543, 1547 (11th Cir. 1989)).

## A. Plaintiff's EEOC Charge Demonstrates That He Intended to Bring a Complaint for Retaliation *Only*

Plaintiff filed his EEOC charge on August 16, 2021, by completing a Charge form. (Ex. A). The form calls for the complainant to specify what the discrimination was "based on" and provides a row of boxes to be checked for each applicable category of discrimination. The boxes include: 1) race, 2) color, 3) sex, 4) religion, 5) national origin, 6) retaliation, 7) age, 8) disability, 9) genetic information, and 10) other. (Id. at 1). Of the ten available categories, Plaintiff only marked the box for retaliation on his charge. (Id.). It is telling that Plaintiff selected only the retaliation box, as the selection demonstrated his intent to report just that one type of discrimination to the EEOC - retaliation. The narrative portion of the charge clearly supports that intent.

Plaintiff begins the particulars of his charge with an explanation of his position at the University, identifying July 2018 as the start of his employment, and naming Dr. Shahram Taj as his direct supervisor and department chair. (Ex. A, 1). In the third sentence of the charge, Plaintiff states that on August 5, 2021, he was informed that his contract would not be renewed. (Id.). Next, Plaintiff identifies various actions Dr. Taj took that Plaintiff believes to be different conditions of employment. (Id.). Plaintiff explains that several months after he began his employment in 2018, his prior employer, a dean at a university in New York contacted Dr. Taj. (Id.). Plaintiff does not explain what Dr. Taj and the former employer discussed or even the means by

which this contact occurred, but states that subsequent to this contact, Dr. Taj immediately "began seeking every opportunity to harass [Plaintiff] and terminate [Plaintiff's] employment." (Ex. A, 1-2). Plaintiff explains that he filed multiple grievances and complaints against Dr. Taj, which included a "protected complaint of national origin discrimination in 2020" and spoke to university officials about his issues with Dr. Taj "multiple times." (Id., 2). The University allegedly did not properly investigate Plaintiff's complaints and blindly sided with Dr. Taj. (Id.). Plaintiff explains that after every complaint he filed against Taj, he received "further retaliation." (Id.).

In the penultimate paragraph of the charge, Plaintiff states that he believes Dr. Taj retaliates against those who make complaints against him. (Ex. A, 2). Plaintiff supports this contention by stating that he is "aware of other professors who were also mistreated and subjected to harassment, and their contracts were not renewed due to their complaints." (Id.). Plaintiff explains that he believes Dr. Taj treats individuals who are not American worse than Americans. (Id.). Plaintiff concludes the narrative by stating that he believes he was discriminated against and retaliated against *for his complaints* in violation of Title VII. (emphasis added) (Id.). Plaintiff does *not* conclude the charge by stating that he was personally discriminated against due to being in some protected category or that he was harassed. The focus of the charge is clearly retaliation against Plaintiff because he made complaints against Dr. Taj with supporting evidence of an alleged pattern of retaliation against other professors who made complaints.

Retaliation is the sole mistreatment of which Plaintiff intended to inform the EEOC in this charge and raise at the administrative level.

The timing of Plaintiff's EEOC charge is also telling – Plaintiff filed the charge on August 16, 2021, just 11 days after he was informed that his employment contract would not be renewed. (Ex. A, 1). The triggering event and thus the basis for Plaintiff's EEOC charge was the allegedly retaliatory action of denying Plaintiff's contract renewal. Because retaliation is the only claim alleged before the EEOC, it is the only claim that has been properly exhausted and can be permitted to proceed. Plaintiff's other claims have not been properly exhausted for the reasons explained in detail below.

**B. Plaintiff Failed to Exhaust His Administrative Remedies with Respect to His Hostile Work Environment Harassment Claim**

Plaintiff is precluded from bringing a hostile work environment claim because it is beyond the scope of his EEOC charge. A hostile work environment claim requires evidence of harassment based on a protected class that was severe or pervasive enough to alter the terms and conditions of employment and create a discriminatorily abusive working environment. *Adams v. Austal, U.S.A., L.L.C.*, 754 F.3d 1240, 1248–49 (11th Cir. 2014) (internal citations omitted). There is nothing in Plaintiff's EEOC charge that references a hostile work environment claim and allegations necessary to establish pervasive and oppressive conditions necessary for such a claim are likewise absent. Simply put, there are absolutely no *facts* in the charge to show any harassment based on a hostile work environment theory. Plaintiff does not use the term "hostile work

environment" or "hostility" anywhere in the charge. Even the word "harass" is seldom to be found. Plaintiff haphazardly mentions that Dr. Taj "subjected" him to harassment in the second paragraph of the charge. (Ex. A, 1). Plaintiff states that Dr. Taj "began seeking every opportunity to harass [Plaintiff] and terminate [Plaintiff's] employment" after Plaintiff's former employer, a dean at a university in New York contacted Dr. Taj in 2018. (Ex. A, 1-2). But nothing in the charge suggests that the New York dean discussed race, national origin, or any other protected class with Dr. Taj, and presumably, Dr. Taj already knew which protected classes Plaintiff belonged to prior to this contact. The other remaining reference to harassment describes the treatment of someone other than Plaintiff, i.e., Plaintiff reports that Dr. Taj harassed his graduate student as a differing term and condition of employment. (Ex. A, 1). Plaintiff's vague passing references to harassment may have put the EEOC on notice of a contentious working relationship between Plaintiff and his department chair, but there is no indication in the charge that the conflict resulted from any racial animus or national origin animus. Plaintiff has not sufficiently alleged a hostile work environment in his EEOC charge and is precluded from litigating this claim.

## C. Plaintiff Failed to Exhaust His Administrative Remedies with Respect to His Disparate Treatment Claims for Discrimination Based on Religion and Race

### i.  *Religion*

As a threshold matter, it is far from clear whether Plaintiff is asserting a disparate treatment on account of religion claim due to vague and muddled allegations and the violation of the one-claim-per-count rule. However, because Plaintiff has

included conclusory language referencing violations of rights on the basis of religion in Paragraphs 41 and 48 of the AC, the University will address why a claim for religious discrimination is also barred.

Under Title VII, it is unlawful for an employer to discriminate against "any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Under the heading "The Nature of this Action," Plaintiff asserts that he has been "discriminated against at work because of his race and national origin." (Doc. 16, ¶ 10). Paragraph 12 of the AC cites to state law prohibiting workplace discrimination and asserts that the University's conduct was designed to discriminate against Plaintiff on the basis of his race and national origin. (Doc. 16, ¶ 12). Under Count I, alleging discrimination under a disparate treatment and hostile work environment harassment theory, Plaintiff identifies two protected classes under Title VII to which he belongs: Middle Eastern and Iranian, (Doc. 16, ¶ 30), i.e., race and national origin. In the very next paragraph, Plaintiff mentions comparators who are non-Middle Eastern, or those of a race different than himself. (Id., ¶ 31). While Plaintiff asserts that acts of University employees violated his rights on the basis of "religion, race, and/or national origin" under the FCRA (Doc. 16, ¶ 41), he does not identify his own religion in the EEOC charge or the AC. Notably, Plaintiff did not check the religion box on the charge and does not even mention religion anywhere in the charge. Nothing in the charge puts the EEOC or the University on notice that Plaintiff believes he has been discriminated against because

of his religion, whatever that religion may be, and it is not reasonable to expect that the subsequent EEOC investigation would encompass religion. Likewise, the AC only makes conclusory statements regarding religious discrimination without providing any facts in support. In the Eleventh Circuit, a plaintiff who omits a protected category from their EEOC charge and includes no facts referencing discrimination based on that category in the charge has not met the jurisdictional prerequisite for a Title VII action. *See, e.g., Chanda v. Engelhard/ICC*, 234 F.3d 1219, 1225 (11th Cir. 2000) (finding that rejection of Title VII national origin discrimination claim was appropriate where EEOC filing did not mention national origin). Therefore, any claims based on religion are barred.

      ii.   *Race*

Because Plaintiff did not select the box for race or even mention race in his EEOC charge, any claims related to race are also barred for failure to exhaust administrative remedies. The "crucial element of a charge of discrimination is the factual statement contained therein." *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 462 (5th Cir. 1970). The plaintiff's later-filed judicial complaint is limited to claims presented in the EEOC charge and claims that are "like or related to" or can reasonably be expected to have grown out of the allegations contained in the charge. *Batson v. Salvation Army*, 897 F.3d 1320, 1328 (11th Cir. 2018). A charging party's failure to check the appropriate box on the EEOC charge indicating what he believes to be the basis for the discrimination (i.e. race, color, sex, disability, retaliation, national origin, age, or religion) does not bar the plaintiff from litigating the cause of

action, so long as the factual allegations in the charge are sufficient. *Sanchez*, 431 F.2d at 462-63. However, courts have found that technical defects, such as failure to check a box, *will* bar discrimination claims when the later claim cannot fairly be expected to prompt an EEOC investigation based on the original charge form and there was no subsequent effort to amend the charge. *Gaston v. Home Depot USA Inc.,* 129 F.Supp.2d 1355, 1365 (S.D. Fla. 2001)(emphasis added). In *Gaston,* the court found that "nothing in Plaintiff's EEOC filing reflects an intention to pursue a claim of national origin discrimination. In fact, Plaintiff was quite clear that his claim was based on race, and it is not reasonable to expect that the subsequent EEOC investigation would also embrace national origin." *Id.*

Similar to *Gaston*, Plaintiff did not mention race in his EEOC charge, nor did he select the race box, or amend the charge to include race before filing his judicial complaint. Plaintiff's charge states that he complained of national origin discrimination to the University because of Dr. Taj's actions. (Ex. A, 2). The charge also states that Plaintiff believes Dr. Taj treats individuals who are not American worse than Americans. Because the "not American" category includes people of all races, nothing in the EEOC charge serves to put the EEOC on notice that Dr. Taj discriminates against employees of a certain race or races within that category. Accordingly, there is no indication that Plaintiff intends to pursue a claim of race-based discrimination in the charge. Therefore, Plaintiff's race-based disparate treatment claim has not been properly brought and should be dismissed.

**IV.    Plaintiff Failed to State a Claim for Hostile Work Environment Harassment**

Plaintiff labels Count I of the AC as a claim for Discrimination/Harassment in Violation of the Civil Rights Act of 1964. (Doc. 16, 3). Count I alleges discrimination based on two distinct theories: disparate treatment and hostile work environment and while labeled only as a Title VII claim, also, in conclusory fashion, alleges violations of the FCRA. (Id., ¶ 41).[4]

A Title VII hostile work environment claim requires proof that "discriminatory intimidation, ridicule, and insult [permeate the workplace in a manner] that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012). Petty office squabbles, communication issues, and "ordinary workplace tribulations" are insufficient to create a hostile work environment. *Mahone v. CSX Transp., Inc.*, 652 F.App'x 820, 823 (11th Cir. 2016) (internal quotations omitted). To establish a prima facie racial and national origin harassment case under the hostile work environment theory, an employee must demonstrate: (1) that he is a member of a protected class; (2) that he was subjected to unwelcome harassment; (3) that the harassment was based on the protected class; (4) that the harassment was severe or pervasive enough to alter the terms and conditions of his employment and

---

[4] Because the Florida Civil Rights Act ("FCRA") is patterned after Title VII, the Eleventh Circuit has consistently applied case law interpreting Title VII to claims brought under the FCRA. *Perry v. Walmart Inc.*, No. 2:18-CV-606-FTM-29-NPM, 2020 WL 1158719, at *5 (M.D. Fla. Mar. 10, 2020) (citing *Wilbur v. Corr. Servs. Corp.*, 393 F.3d 1192, 1195 n.1 (11th Cir. 2004)). Accordingly, the University will address these claims together.

create a discriminatorily abusive working environment; and (5) that the employer is responsible for the environment under a theory of either vicarious or direct liability. *Adams*, 754 F.3d at 1248–49 (11th Cir. 2014). The fourth element requires proof that the work environment is both subjectively and objectively hostile. *Id.* at 1249. A plaintiff must subjectively perceive the harassment as sufficiently severe or pervasive to alter the terms or conditions of his employment, while the objective severity of harassment is judged from the perspective of a reasonable person in the plaintiff's position. *Id.* The Supreme Court in *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993) identified a four-factor test for courts to consider and employ in analyzing the objective component: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and, (4) whether the conduct unreasonably interferes with the employee's job performance. In light of these factors, courts ask whether, under the totality of the circumstances, a reasonable person would find the harassing conduct severe or pervasive so as to alter the terms or conditions of the plaintiff's employment. *Adams*, 754 F.3d at 1251. Quite simply, the facts alleged here are insufficient to establish an intolerable working environment when read against Eleventh Circuit law.

While a liberal reading of the AC may demonstrate that Plaintiff subjectively perceived the described incidents as sufficiently severe and pervasive, the allegations do not demonstrate that the alleged harassment was *objectively* severe and pervasive enough to alter the terms and conditions of Plaintiff's employment.

Objective Severity Test

In examining an alleged harasser's behavior, courts will only consider factual allegations that relate to the protected class or classes of the plaintiff. *See Gupta v. Fl. Bd. of Regents*, 212 F.3d 571, 583 (11th Cir. 2000) (overruled on other grounds by *Crawford v. Carroll*, 529 F.3d 961, 973–74 (11th Cir. 2008)) (in sexual harassment case, finding that courts only consider factual allegations that are of "a sexual or gender-related nature" and exclude those "that do not relate to the sex of the actor or…offended party"). Simply labeling the work environment as discriminatory and alleging one suffered "continuous[] harassment" (Doc. 16, ¶ 10) as Plaintiff has done, without more factual enhancement, is insufficient to state a plausible claim. *See White v. Montgomery Cnty. Comm'n*, No. 2:20-CV-14-WKW-KFP, 2020 WL 7133537, at *3 (M.D. Ala. Nov. 9, 2020), report and rec. adopted, No. 2:20-CV-14-WKW, 2020 WL 7129031 (M.D. Ala. Dec. 4, 2020)(citing *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010). Plaintiff presents no allegations that describe incidents of harassment he endured because of his national origin or race and cannot establish that any allegedly problematic event was *based on* or the *result of* his protected classes, as opposed to some other permissible reason. However, with a very liberal reading of the claims, the Court may look at the following 3 allegations for the purposes of determining whether Plaintiff's circumstances constituted a hostile work environment.

- Paragraph 16 – Dr. Taj's alleged insult to Plaintiff, telling Plaintiff that he "must see a psychiatrist" and clarification that the reason for the "insult" was "same as Zahra," a Muslim-Iranian University employee

· Paragraph 27 – Dr. Taj attempted to remove Plaintiff as a graduate supervisor after Plaintiff's African American student insisted on retaining Plaintiff as his supervisor, which led to the administration harassing Plaintiff and the student

· Paragraph 36 – received discriminatory notes in syllabi comments such as "I do not believe the communication level of the instructor is adequate for a university level instructor teaching an upper level course"[5]

    i.  Frequency

In *Fortson v. Carlson*, 618 F.App'x 601, 607 (11th Cir. 2015), the Eleventh Circuit held that the plaintiff failed to create a fact question about the frequency of his harassment when he testified to only nine incidents involving racially derogatory language (specifically, "black ass" or "black ass fool") over his two-and-a-half-year employment period. Similarly, in *Vasquez v. Upson Cnty. Hosp., Inc.*, No. 5:18-cv-73-TES 2019 WL 5395447, at *6 (M.D. Ga. Oct. 22, 2019), the court found that seven instances of conduct related to the plaintiff's national origin in a period of roughly one year during the course of her eight-year employment were insufficiently frequent to meet the frequency factor. *See also Eliassaint v. RTG Furniture Corp.*, 551 F.Supp.3d 1293, 1309-10 (M.D. Fla. 2021)(offensive comments and statements, which were sporadic over a period of at least two years to Black Haitian employee, which included

---

[5] Defendant submits that Plaintiff's interpretation of this straightforward critique of his work as discriminatory is wholly unreasonable. Comments of this nature are generally not traceable to a plaintiff's race or national origin. *See Greywoode v. Sci. Applications Int'l Corp.*, 943 F. Supp. 2d 1355, 1370–71 (M.D. Ala. 2013)(where harassing conduct included: (1) shouting at plaintiff during a team meeting and calling his work "atrocious;" (2) being assigned undesirable tasks; (3) criticizing plaintiff's use of aspect ratio in programming without knowledge or basis for this criticism; (4) mimicking plaintiff's African accent outside of his presence; (5) criticizing plaintiff's design work; (6) speaking to plaintiff in a disrespectful and discourteous manner; and (7) confronting plaintiff in a parking lot about his behavior during a customer meeting; the court found that none of the foregoing acts were based on or a result of the plaintiff's race). However, this incident regarding the syllabi comment, which requires the Court to draw improbable inferences to consider the comment directed to Plaintiff's national origin is being included in an abundance of caution.

statements that "Haitians always use machetes to cut people's heads off," "don't do voodoo on me," and "I am a white man, I can't write your name," were not sufficiently severe or pervasive to alter the conditions of employment or prevent the plaintiff from doing his job).

With respect to the frequency factor of the objective test for the severity or pervasiveness of the conduct, Plaintiff's allegations here fall far short. Courts require much, much more for harassment to be considered pervasive. *See, e.g., Smelter v. S. Home Care Servs., Inc.*, 904 F.3d 1276, 1285 (11th Cir. 2018) (considering plaintiff's testimony that she heard racist comments "every day" as evidence of frequent racial harassment); *Livingston v. Marion Bank & Tr. Co.*, 30 F.Supp.3d 1285, 1311–12 (N.D. Ala. 2014) (finding that jury could conclude sexually harassing conduct was "pervasive" where plaintiff asserted that the "number of inappropriate comments directed towards [her] [was] too many to count," with sexually harassing incidents "taking place several times each week"). Here, three isolated incidents over the course of approximately three years cannot be considered pervasive.

ii.   Severity

Likewise, the alleged acts of harassment are not nearly severe enough to have altered the terms and conditions of Plaintiff's employment. As explained above, the vast majority of the incidents described in the AC are not based on or related to any protected category, and therefore do not "count" towards the creation of a hostile work environment. Moreover, every incident described in the AC, whether related to a protected category or not, is fairly innocuous. Ad hoc committees to review

inadequate syllabi, sporadic teaching assignments, denials of startup funding, not responding to requests for clarification, and delays in releasing computer equipment are not barred by Title VII. (Doc. 16, ¶¶ 21, 24, 25, 20, 37).

The three acts in the AC arguably related to race or national origin are simply not severe, as illustrated by other Eleventh Circuit cases examining racial and national origin harassment. *See, e.g.*, *Edmond v. Univ. of Miami*, 441 F.App'x 721, 725 (11th Cir. 2011) (Black Haitian-born university employee failed to show that he suffered from harassment rising to level of severity or pervasiveness required to establish hostile work environment claim; while evidence that employee was subjected to unwelcome harassment including telling him that he had Haitian accent, yelling at him in presence of patients, family members and coworkers, assigning him patients who had animosity against Haitians, and calling coworker to interpret for him in presence of others showed that employee had a difficult relationship with the alleged harasser, it did not indicate that employee regularly suffered from severe or pervasive hostile conduct); *Barrow v. Georgia Pacific Corp.*, 144 F.App'x 54, 57-58 (11th Cir. 2005), (affirmed summary judgment despite "displays of the rebel flag on tool boxes and hard hats, the letters 'KKK' on a bathroom wall and on a block-saw console, and a noose in another employee's locker[,] as well as two or three threats to "kick [plaintiff's] 'black ass[,]' " one supervisor calling plaintiff a "n*****r" and threatening to "cut" him if he looked at a white girl, and another supervisor calling him "black boy" because such conduct was merely isolated incidences). Considering Eleventh Circuit precedent finding much more egregious conduct based on a protected category to be insufficiently severe under

the objective test, the three alleged fairly benign incidents arguably related to a protected category at issue here cannot meet the severity factor as required.

iii.   Physically threatening/humiliating or mere offensive utterance

The AC contains just one statement that could be broadly construed as somewhat threatening, an allegation that on September 25, [year unknown], Plaintiff was told that "serious stuffs [sic] are waiting for you" after complaining of mistreatment. (Doc. 16, ¶ 46). However, because this statement is not in any way connected to race or national origin, the Court cannot consider it in evaluating whether Plaintiff has stated a hostile work environment claim. Even if Plaintiff were able to somehow link this isolated comment to a statement or an act related to his race or national origin, no reasonable jury could find that such a vague comment towards Plaintiff was sufficiently physically threatening or humiliating rather than a mere offensive utterance.

iv.   Interference with job performance

The fourth prong courts examine in assessing whether the harassment was sufficiently severe or pervasive looks to whether the conduct interfered with the employee's job performance. There are no allegations in the AC that suggest any acts by the University or its employees interfered with Plaintiff's job performance.

Courts frequently remind litigants that Title VII is not a general civility code and "simple teasing, offhand comments, and isolated incidents (unless extremely serious) do not constitute a hostile work environment." *Guthrie v. Waffle House, Inc.*, 460 F.App'x 803, 806 (11th Cir. 2012). This axiom is particularly applicable to

Plaintiff's allegations. The comments and acts cited in the AC do not contain any racial or ethnic statements, insults, or overtones; they evidence nothing more than discord between Plaintiff and his department chair and Plaintiff's subjective perception that his work was being unfairly evaluated, which is not actionable under Title VII. *See Doe v. Dekalb Cnty. Sch. Dist.*, 145 F.3d 1441, 1449 (11th Cir. 1998) (noting that not "every trivial personnel action that an irritable chip-on-the-shoulder employee did not like would form the basis of a discrimination suit") (internal quotations omitted)); *Sasser v. Ala. Dep't. of Corrs.*, 373 F.Supp.2d 1276, 1290 (M.D. Ala. 2005) ("Title VII does not protect an employee from harsh criticism for [his] employer."). Likewise, unfair reprimands and unprofessional treatment do not demonstrate that purported harassing conduct towards Plaintiff was *because of* his national origin or race. *See Greywoode v. Sci. Applications Int'l Corp.*, 943 F.Supp.2d 1355, 1371 (M.D. Ala. 2013). And even if one or all three of the arguable race or national origin-based acts *were* solely attributable to Plaintiff's race or national origin, these events alone do not transform the remaining harassing conduct into harassment attributable to Plaintiff's national origin or race.

This Court has recently dismissed claims alleging a hostile work environment where a plaintiff set forth similarly thin allegations. *See Williams v. Polk Cnty. Bd. of Cnty. Comm'rs*, No. 8:20-CV-2842-WFJ-SPF, 2021 WL 2530994, at *5 (M.D. Fla. June 21, 2021) (dismissing HWE count where employee alleged a supervisor called him into her office at least three times in three months when she would scold him for holding Caucasian subordinates to applicable workplace rules, threaten to create a disciplinary paper trail and ultimately terminate the plaintiff if he did not give the Caucasian

employees impunity. Finding a liberal reading of the complaint showed that plaintiff alleged his authority was undermined and he was treated unprofessionally and unfairly reprimanded for trying to implement applicable protocol. While plaintiff subjectively believed the supervisor's actions were based on his skin color, the complaint was devoid of any allegations of racial slurs or name-calling, let alone any that occurred with such frequency and severity as to interfere with job performance.). The Court should follow suit and likewise dismiss the hostile work environment claims *sub judice*.

The *Iqbal* pleading standard Plaintiff must meet to survive a Rule 12(b)(6) motion does not require detailed factual allegations but demands more than an unadorned accusation. *Iqbal*, 556 U.S. at 678 (2009). In considering a Rule 12(b)(6) motion to dismiss, a complaint's factual allegations are accepted as true and construed in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Applying this standard to Plaintiff's hostile work environment claim reveals the quintessential unadorned "Defendant harmed me" allegation which requires dismissal. There is no indication that anyone at the University ever uttered a racial slur directed at Plaintiff or disparaged him due to his national origin. Plaintiff must plead facts to establish "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Fernandez v. Trees, Inc.*, 961 F.3d 1148, 1152 (11th Cir. 2020). Accordingly, should the Court determine that Plaintiff duly exhausted his administrative remedies with respect to his hostile work environment harassment claim, this claim should nevertheless be

dismissed because the AC presents absolutely no facts to support Plaintiff's conclusory allegations.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this Court dismiss Plaintiff's claims premised on disparate treatment on the basis of religion and race and the hostile work environment claim in the Amended Complaint.

## LOCAL RULE 3.01(g) CERTIFICATION

Pursuant to Local Rule 3.01(g), the undersigned counsel hereby certifies that she conferred with Plaintiff regarding the relief sought in this motion on May 16, 2022, by telephone. Plaintiff is generally opposed to the relief sought in the foregoing motion and will provide detailed responses in opposition via a future filing.

Dated: May 16, 2022                    Respectfully submitted,

**ASHLEY MOODY**
**ATTORNEY GENERAL**

_/s/  Eugenia Izmaylova_
Eugenia Izmaylova
Senior Assistant Attorney General
Florida Bar No. 1003467
Office of the Attorney General
Concourse Center IV
3507 E. Frontage Road, Suite 150
Tampa, FL 33607
(813) 577-4528 – Telephone
Eugenia.Izmaylova@myfloridalegal.com
Christina.Santacroce@myfloridalegal.com
Monserrat.Zapien@myfloridalegal.com
_Lead Counsel for Defendant_

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 16, 2022, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF System which will serve those persons capable of receiving such notice of electronic service. I further certify that a true and correct copy of the foregoing was served *via* email to Plaintiff, *pro se*, Dr. Mostafa Kamali Ardakani at ardakani57@gmail.com and First-Class U.S. Mail to, 5040 Long Lake Circle, Apt. 202, Lakeland, Florida 33805.

*/s/ Eugenia Izmaylova*
Senior Assistant Attorney General